FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 06, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SUSAN C.,[1]

     Plaintiff,

  v.

FRANK BISIGNANO,
Commissioner of Social Security,

     Defendant.

No. 2:25-cv-00306-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS**

Due to major depressive disorder, opioid dependance, generalized anxiety disorder, post-traumatic stress disorder (PTSD), migraine headaches, sleep apnea, and knee issues, Plaintiff Susan C. claims that she is unable to work fulltime and applied for disability benefits and

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

supplemental security income benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly assessed Plaintiff's credibility as to her knee impairments, migraine headaches, and mental impairments. As is explained below, Plaintiff has not established any consequential error. The ALJ's denial of benefits is affirmed.

## I.     Background

In November 2022, Plaintiff filed an application for benefits under Title 2 and an application for benefits under Title 16, claiming disability beginning November 1, 2022, based on the physical and mental impairments noted above.[2] Plaintiff's Title 2 and Title 16 claims were denied at the initial and reconsideration levels.[3]

After the agency denied Plaintiff benefits, ALJ Shane McGovern held a telephone hearing in June 2024, at which Plaintiff appeared

---

[2] AR 227-228, 229-235, 282-284.

[3] AR 122-127, 130-133, 134-137.

DISPOSITIVE ORDER - 2

with her representative.[4]  Plaintiff, a medical expert, and a vocational expert testified.[5]

After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[7] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Michael Brown[8] and Leslie P., PhD, that Plaintiff had mild to moderate limitations due to her mental impairments to be generally persuasive.

---

[4] AR 36-69.

[5] *Id.*

[6] AR 14-35.  Per 20 C.F.R. §§ 404.1520(a)-(g); 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 22-27.

[8] AR 75. The file does not contain a professional designation for Mr. Brown but the designation code 38 indicates that his medical specialty is psychology.

- The opinions of state agency evaluators Wayne Hurley, MD, and Phillip Matar, MD, that Plaintiff could perform light work with certain postural and environmental limitations to be generally persuasive.[9]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements through December 31, 2027, and had not engaged in substantial gainful activity since November 1, 2022, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, major depression, opioid dependence with other opioid induced disorder, acute recurrent frontal sinusitis, bilateral eustachian tube dysfunction, migraine, generalized anxiety disorder, PTSD, obstructive sleep apnea, and bilateral knee degeneration.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled

---

[9] AR 27-28.

DISPOSITIVE ORDER - 4

the severity of one of the listed impairments, and the ALJ specifically considered Listings 1.18, 11.02, 12.04, 12.06, and 12.15.

- RFC: Plaintiff had the RFC to perform light work with the following exceptions:

    no more than occasional ramps and stairs, stoop, crouch, kneel, and crawl; no exposure to extreme cold or excessive vibration; no more than occasional concentrated exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations; no exposure to moving mechanical parts and unprotected heights; no more than a moderate noise intensity level as defined in the Selected Characteristics of Occupations; no more than normal indoor ambient lighting; no work requiring specific production rate such as assembly line work or work requiring hourly quotas; no more than occasional changes in a routine work setting; and frequent interaction with supervisors and coworkers and occasional interaction with the general public.

- Step four: Plaintiff can perform her past relevant work as an administrative assistant (DOT 169.167-010) both as she performed it and as it is generally performed.

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff can perform work that existed in significant numbers in the national economy,

DISPOSITIVE ORDER - 5

such as a sub assembler (DOT 729.684-054), marker (DOT 209.587-034), and routine clerk (DOT 222.687.022 ).[10]

The Appeals Council denied Plaintiff's timely request for review, and Plaintiff timely filed suit in this Court.[11]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[10] AR 19-30.

[11] AR 1-6, ECF No. 1.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 6

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

## III.  Analysis

Plaintiff seeks relief from the denial of disability on two grounds. She argues the ALJ erred when evaluating Plaintiff's subjective complaints and erred in his step-five finding.[15] Initially, the Court notes that Plaintiff's argument that the ALJ erred at step five is moot,

---

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[15] ECF No. 14, pg. 2. In her brief, Plaintiff incorrectly highlights her main argument as being the ALJ's consideration of the medical opinions of treating sources.

DISPOSITIVE ORDER - 7

both because it is dependent on establishing error in the ALJ's consideration of Plaintiff's subjective claims and because the ALJ made a finding at step four that Plaintiff was capable of performing past relevant work. As is explained below, the Court concludes that Plaintiff fails to establish the ALJ erred in his evaluation of Plaintiff's symptom reports.

## A.    Symptom Reports: Plaintiff fails to establish consequential error

Plaintiff argues the ALJ failed to properly assess her subjective complaints regarding her right knee, her migraine headaches, and her mental impairments.  She argues that the ALJ erred in finding that her subjective complaints were not consistent with the medical evidence and her reported activities of daily living.[16] The Commissioner asserts that the ALJ's reasoning regarding his consideration of Plaintiff's subjective complaints was reasonably articulated and is supported by substantial evidence.[17]

---

[16] ECF No. 14.

[17] ECF No. 16.

DISPOSITIVE ORDER - 8

## 1.    Standard

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[18] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[19] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.[20] "The

---

[18] *Molina*, 674 F.3d at 1112.

[19] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[20] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

clear and convincing standard is the most demanding required in Social Security cases."[21] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[22]

### 2.    Plaintiff's Testimony

At her hearing in June 2024, Plaintiff testified that she is 5'6" and weighs 258 pounds, is divorced, and lives alone in a house with her two daughters who are aged 7 and 18 years old.[23] She said that her 18-year-old daughter "runs the house," does the chores, goes to college and has a job, and that she also picks up her younger sister at school when

---

[21] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[22] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

[23] AR 45.

Plaintiff cannot.[24] Plaintiff said that she cannot cook because her back hurts too much if she stands still so her daughter does that.[25] Plaintiff said that she only drives to pick up her daughter at school and her older daughter drives all other times.[26]

Plaintiff testified that she has migraines 2 or 3 times a week and they typically last for 3 days.[27] She said she may have one day per week that she does not have a migraine.[28] She said that when she feels a migraine coming on she will put an ice pack on her eyes and take a Nurtec.[29] She said she had been using Botox for 18 months and it was

---

[24] AR 45-46.

[25] AR 46.

[26] AR 47.

[27] *Id.*

[28] AR 48.

[29] *Id.*

helping "a little."[30] She said that it helped with the severity of the migraines but not with the frequency.[31]

Plaintiff testified that she had an associate's degree in medical assisting and phlebotomy, and that she last worked as a self-employed vendor creating and selling handmade jewelry.[32] She testified that she will go to farmer's markets one day a week and will sell her bracelets for 4 to 6 hours.[33] She said that her daughter carries all of the supplies and does all the heavy lifting but that she is still exhausted and in pain after the day.[34] She said the most she made in a month was $1000 and it was working more than one day a week at fairs and festivals but she does not do festivals anymore.[35]

---

[30] *Id.*

[31] AR 48-49.

[32] AR 49-50.

[33] AR 50.

[34] *Id.*

[35] AR 50-51.

DISPOSITIVE ORDER - 12

Plaintiff said she last worked full time at Biotech for 9 years as a compliance controller and left the job due to downsizing.[36] She tracked all billing and made sure that medical records were documented correctly.[37] There was no lifting required and she was working from home at a desk.[38] Before that job she worked for 2 years as a phlebotomist.[39] She said that when working for Biotech she was able to set her own schedule and she did not work for 3 days a week because of migraines.[40] She said that she had missed 2 farmer's markets due to headaches or depression.[41] She works 10 hours a week making jewelry and her daughters do not help.[42] When she has a migraine she is

---

[36] AR 51-52.

[37] AR 52-53.

[38] AR 53.

[39] AR 53-54.

[40] AR 54-55.

[41] AR 55-56.

[42] AR 56.

DISPOSITIVE ORDER - 13

sensitive to light and sound and is nauseated.[43] She only drives to pick up her daughter at school.[44]

Plaintiff testified that her depression and her pain affects her ability to put things away and clean her home and said her older daughter does that the cleaning.[45] She said she goes shopping with her daughters and only when necessary, about once a month, and that she cannot leave the house because she feels people are judging her.[46] She said that twice a week her migraines are so bad that she cannot pick up her younger daughter at school.[47] She said she is exhausted by dressing and showering and does not associate with family or friends because she is too tired.[48]

---

[43] AR 56-57.

[44] AR 57.

[45] AR 57-58.

[46] AR 58-59.

[47] AR 22-23.

[48] AR 60.

3.    The ALJ's Findings

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms of her medically determinable mental and physical impairments not entirely consistent with the medical evidence and other evidence in the record.[49]  The ALJ recited the medical record in detail, both regarding Plaintiff's physical and mental impairments.

a.    *Mental Health*

Plaintiff argues that the ALJ erred in concluding that her ability to conduct a bead bracelet business showed a greater functional capacity than she alleged.  Plaintiff argues that she does not conduct the business full-time and that she testified that her daughter provides significant assistance to her.

The ALJ did acknowledge Plaintiff's assertion that her older daughter does all the heavy lifting and sets up the canopy for sales of bracelets at farmers markets.[50] Even so, the ALJ reasoned:

---

[49] AR 23-29.

[50] AR 23.

DISPOSITIVE ORDER - 15

First, though the claimant alleged that she is unable to work, she nevertheless has been able to engage in work after the alleged onset date. During the hearing, she testified that she works making and selling jewelry. This work activity shows that the claimant is less limited than she has alleged. Even more, this work activity further supports that the claimant has the capacity for the range of work as set forth in above residual functional capacity.[51]

With regard to Plaintiff's work making and selling jewelry, the ALJ noted further:

In the beginning of January 2023 the claimant reported that she recently participated in the holiday craft bazaar, locally selling bracelets and jewelry that she made. She had a good sales event, where she was accepted for selling at a retail location. She was going to also have a table set up at a nail salon for selling bracelets.[52]

Plaintiff's reported activity of attending craft fairs every weekend and dealing with the general public, as well as her activities in applying for retail space in nail salons is inconsistent with her testimony that she rarely leaves home and is unable to go shopping

---

[51] AR 24.

[52] AR 25.

more than once a month, and then accompanied, because she has problems appearing in public due to feeling people are judging her.[53]

The ALJ may discount a claimant's reported disabling symptoms if she can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms.[54] But "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."[55] "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."[56] For these reasons, activities of daily living bear on

---

[53] AR 58-59.

[54] *Molina*, 674 F.3d at 1113.

[55] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (cleaned up)).

[56] *Smolen*, 80 F.3d at 1287 n.7.

a claimant's symptom reports only if the level of activity is inconsistent with the individual's claimed limitations.[57]

In this instance, the Court concludes that the ALJ properly considered that Plaintiff's reported activities were not consistent with her allegations of extreme limitations.  While Plaintiff testified that she was fearful to leave her home and rarely able to go out in public, the evidence showed that she was able to engage with the public regularly and that her limitations were not as extreme as alleged.

### b.    *Knee impairments*

Plaintiff also alleges in her brief that the ALJ erred in finding that her allegations regarding extreme limitations in the use of her

---

[57] *Reddick*, 157 F.3d at 722. *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

right knee are not credible.  Again, the Court finds that the record substantially supports the ALJ's findings.

On June 8, 2022, Plaintiff presented to Dr. Stuart Freed, MD, for follow-up regarding her suboxone dependency and pain.[58] Plaintiff requested narcotics but admitted that she was doing well on Suboxone and reported that she had been to the emergency room 3 times for right knee pain.[59] Dr. Freed noted that he confronted Plaintiff that she had appeared at her last clinic visit with a limp while using a brace and crutch, and complaining of pain but that 2 hours later he saw her walking down the street with her daughter and she was using no crutch or brace, had a normal gait, and was in no apparent pain.[60] Plaintiff then told Dr. Freed that her pain comes and goes.[61] On examination, Dr. Freed noted full range of motion of the right knee, negative McMurray's, negative Lachman's, negative Anterior/posterior

---

[58] AR 492.

[59] *Id.*

[60] *Id.*

[61] *Id.*

drawer, and negative varus valgus instability.[62] Dr. Freed diagnosed bursitis and patellar tendinitis which he found "is not severe."[63]

A week later, on June 15, 2022, Plaintiff presented to PA-C Joey Victoria-Lopez, complaining of a sudden onset of right knee pain, with occasional clicking and popping in her knee.[64] On examination, Plaintiff had no tenderness, normal gait, no effusion, full range of motion, normal strength, negative patellar grind test, no varus valgus instability, negative anterior/posterior drawer testing, and pain but not crepitus with McMurray test.[65] PA-C Victoria-Lopez referenced a January 2020 x-ray indicating mild narrowing of the medial joint space, and diagnosed right knee primary osteoarthritis.[66] PA-C Victoria-Lopez performed a right knee steroid injection.[67]

---

[62] AR 493.

[63] *Id.*

[64] AR 489-490.

[65] AR 491.

[66] *Id.*

[67] AR 491-492.

DISPOSITIVE ORDER - 20

On June 29, 2022, Plaintiff presented to Dr. Stuart Freed for follow-up regarding her suboxone dependency and pain.[68] She reported that her knee pain was a 3-4 out of 10 and that her back pain was "very manageable".[69] She reported that she could complete all ADL's but occasionally used a cane for support if her knee was very sore.[70]

The ALJ found that Plaintiff had severe impairment of bilateral knee degeneration, and accepted the restrictions opined to by the medical experts.  No medical opinion contradicts those opinions and it was the opinion of Plaintiff's own source that her physical impairment did not cause more severe limitations.

The Court concludes that the ALJ's findings are supported by the record.

### c.    _Migraine Headaches_

Plaintiff alleges that the ALJ erred in failing to accept her testimony at hearing that she suffered from three migraine headaches

---

[68] AR 482.

[69] _Id._

[70] _Id._

per week and that they lasted for up to three days.

Again, Plaintiff's allegations are inconsistent with the medical record, which indicates that for a short period of time Plaintiff's migraine headaches did occur with that level of intensity and frequency but that once treated with a combination of Botox and Nurtec, Plaintiff's migraine headaches were adequately managed.

It was noted by the ALJ that Plaintiff's migraine headaches met the criteria for chronic intractable migraines but that once treated with Botox Plaintiff's headaches reduced in frequently and severity by 50%.[71]  The ALJ noted that while Botox treatment was significant, it appears that the combination of Botox and Nurtec reduced the migraine headaches to a manageable burden.[72]

On July 20, 2023, Plaintiff presented to PA-C Nicole Foster for follow up regarding Botox injection for chronic migraine.[73] It was noted that Plaintiff had tried and failed conservative therapy with multiple

---

[71] AR 25.

[72] AR 26.

[73] AR 1024.

DISPOSITIVE ORDER - 22

medications and that prior to initiation she had met the criteria for chronic migraine with more than 15 migraines per month.[74] An insurance approval for Nurtec was requested, because in the prior 3 months Plaintiff had suffered 24 episodes of moderate to severe pain.[75] PA-C Foster diagnosed intractable/treatment resistant chronic migraine without aura and without status migrainosus.[76][77]

On July 25, 2023, Plaintiff's insurance carrier approved her prescription for Nurtec and an order was sent to her pharmacy via facsimile.[78]

A treatment note from Plaintiff's follow-up visit with PA-C Foster on October 24, 2023, indicated that Plaintiff suffered approximately 8

---

[74] *Id.*

[75] *Id.*

[76] AR 1025.

[77] Status migrainosus is a migraine lasting longer than 72 hours. Cleveland Clinic, *Status Migrainosis: what it is, causes, symptoms and treatment.* www.clevelandclinic.org.

[78] AR 1023.

migraines per month when treated with Botox and that the headaches were quickly treated with Nurtec.[79] PA-C Foster noted that Nurtec was approved on July 25, 2023, and stated that "Nurtec has been significantly helpful to reduce migraine burden."[80]

At a follow-up appointment for Botox injection on January 24, 2024, Plaintiff reported that her migraine episodes had lowered to approximately 4 per month and that they were treated quickly with Nurtec.[81]

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms."[82] Symptom improvement, however, must be weighed within the context of an

---

[79] AR 1100.

[80] *Id.*

[81] "AR 1077.

[82] 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

"overall diagnostic picture," particularly for mental-disorder symptoms which often wax and wane.[83] If treatment relieves symptoms to an extent that allows the claimant to return to a level of function she had before she developed mental-disorder symptoms, such treatment can undermine a claim of disability.[84]

The ALJ did not err in considering that Plaintiff's testimony that she continued to experience 3 episodes of migraines per week, with each lasting up to 3 days, was wholly inconsistent with the medical evidence showing 4 migraines per month, which were treated and relieved "quickly."[85]

Plaintiff reported to her doctors that her knee pain was manageable and that her migraines responded quickly to Nurtec.  An

---

[83] *Holohan v. Massanari*, 246 F.3d1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods ... are not inconsistent with disability.").

[84] *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

ALJ may discount a claimant's symptom reports if they are inconsistent with her prior statements.[86]

In addition, the Court concludes that the ALJ properly considered that Plaintiff's reported activities were not consistent with her allegations of extreme limitation caused by her migraines.

The Court concludes that based upon the record before it, the ALJ did not err in his evaluation of Plaintiff's subjective complaints.

4.    Summary

It is the ALJ's responsibility to review and evaluate the conflicting evidence and Plaintiff's subjective complaints.[87] The Court finds that the ALJ accurately recited the testimony and record and further concludes that the ALJ adequately explained his reasoning.

---

[86] 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[87] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

The ALJ meaningfully explained why he evaluated Plaintiff's subjective complaints as he did, and these reasons are supported by substantial evidence. The Court declines to remand as to this issue.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **AFFIRMED**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 14 and 16**, enter **JUDGMENT** in favor of **Defendant**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 6th day of March 2026.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge